IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**J.C. CARY**                                                                              **PLAINTIFF**

v.                                        **Case No. 2:11-cv-140-KGB**

**UNITED STATES OF AMERICA**                                          **DEFENDANT**

## OPINION AND ORDER

Before the Court is defendant United States of America's motion for summary judgment (Dkt. No. 11). Plaintiff J.C. Cary has responded (Dkt. No. 16), and the United States has replied (Dkt. No. 21). The motion is denied.

### I.        Introduction and Factual Background

Mr. Cary brings this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* It is undisputed that on July 9, 2009, in Brinkley, Arkansas, a motor vehicle accident occurred between Mr. Cary and an employee of the United States. It is also undisputed that Mr. Cary signed a document titled "Voucher for Payment Under Federal Tort Claims Act" (hereinafter "voucher") (Dkt. Nos. 13, 17). The parties do not dispute that the amount of the claim was $500 (Dkt. No. 11-1, at 1). The crux of the dispute is the meaning of the voucher and the circumstances surrounding Mr. Cary's signing the voucher.

The United States asserts as a defense to Mr. Cary's claim that the voucher is a complete release and settlement agreement between the parties. Specifically, the United States contends the voucher released the United States from any bodily injury claims arising out of the accident. Mr. Cary, on the other hand, argues that the voucher applies only to damages to his vehicle. Mr. Cary claims that the plain language of the voucher makes clear the voucher "does not purport to resolve the claimant's personal injury claim" (Dkt. No. 16, at 1).

The voucher itself contains the following language:   "BRIEF DESCRIPTION OF CLAIM . . . This claim is for damages to the claimant's privately owned vehicle" (Dkt. No. 11-1, at 1).  The voucher contains below that a section titled "ACCEPTANCE BY CLAIMANT(S)," which reads as follows:

> I, (We), the claimant(s) and beneficiaries do hereby accept the within stated award, compromise, or settlement as final and exclusive on me . . . and agree that said acceptance constitutes a complete release by me . . . of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen and bodily and personal injuries, damage to property and the consequences thereof, resulting, and to result, from the same subject matter that gave rise to the claim for which I . . . now have or may hereafter acquire against the United States . . . .

(Dkt. No. 11-1, at 1).

In the alternative, Mr. Cary asserts that the voucher is ambiguous to the extent that "in one phrase it restricts the subject matter of the claim to damages to the claimant's privately owned vehicle while in another provision it refers to bodily and personal injuries" (Dkt. No. 18, at 2).  The United States disagrees and maintains that, in return for accepting $500 for the property damage to his vehicle, Mr. Cary released the United States "from any further claims related to the accident, including those for bodily and personal injury" (Dkt. No. 21, at 3).

Mr. Cary also contends that, prior to signing the document, he spoke with a representative of the United States who told him "that the $500 was about the deductible on the car" (Dkt. No. 16-2, at 7).  During Mr. Cary's deposition, the United States asked this question: "Did you remember calling anyone prior to signing this voucher for payment and visiting with them at the USDA before you signed it?" (Dkt. No. 16-2, at 11-12).  Mr. Cary responded that he did indeed call a United States representative and asked about his insurance deductible (Dkt. No.

2

16-2, at 12). When asked how the government responded to his phone call, Mr. Cary stated, "Well, they – they left me a voice mail one day calling me and about the signing the paper for the – to receive the deductible back" (Dkt. No. 16-2, at 12). He also stated that the voicemail is "probably what provoked me into signing . . . this paper" (Dkt. No. 16-2, at 12).

## II.     Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to establish by "specific facts" that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). An issue of fact is material only if it could affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## III.    Applicable Law and Analysis

The Eighth Circuit has concluded that, in FTCA cases, courts are "bound to apply the law of the state in which the acts complained of occurred." *Goodman v. United States*, 2 F.3d 291, 292 (8th Cir. 1993). *See also Bacon v. United States*, 321 F.2d 880, 884 (8th Cir. 1963) (applying Missouri law to determine whether the United States was released by plaintiff's signing a covenant not to sue); *Penn v. United States*, No. 4:10-cv-1145-SWW, 2012 WL 3555302, at *3 (E.D. Ark. Aug. 16, 2012) (applying Arkansas law to an FTCA claim involving a motor vehicle accident). A federal district court has jurisdiction under the FTCA "where the

3

United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). It is undisputed that the acts giving rise to this action occurred in Arkansas. This Court therefore applies Arkansas contract law.

In Arkansas, "the parol evidence rule 'requires, in the absence of fraud, duress, mutual mistake, or something of the kind, the exclusion of all prior or contemporaneous, oral or written evidence that would add to or vary the parties' integrated written contract, which is unambiguous.'" *Montwood Corp. v. Hot Springs Theme Park Corp.*, 766 F.2d 359, 361 (8th Cir. 1985) (quoting *Walt Bennett Ford, Inc. v. Dyer*, 4 Ark. App. 354, 355, 631 S.W.2d 312, 313 (1982)). Arkansas courts have long held that, when fraud is alleged, parol evidence is normally admissible "to show that the agreement was other than set out in the instrument . . . ." *Gainer v. Tucker*, 255 Ark. 645, 651, 205 S.W.2d 636, 640 (1973). *See also St. Louis I.M. Ry. Co. v. Hambright*, 87 Ark. 614, 625, 113 S.W. 803, 807 (1908) ("The rule of evidence forbidding the addition, alteration, or contradiction of a written instrument by parol testimony of antecedent and contemporaneous negotiations does not apply where there is an issue of fraud in the procurement of the writing."). "Although promissory inducements cannot be asserted to vary the terms of a subsequent written contract, such inducements and the reliance which they evoke may, nonetheless, amount to fraudulent misrepresentations sufficient to avoid the contract by way of defense." *Farmers Co-op Ass'n v. Garrison*, 248 Ark. 948, 956, 454 S.W.2d 644, 648-49 (1970).

In this case, drawing all justifiable inferences in Mr. Cary's favor, as the Court is required to do at the summary-judgment stage, the Court concludes that summary judgment is not proper. There are disputed issues of fact material to the alleged fraud, duress, or mutual mistake and to

the issue of whether the voucher was intended to be an integrated contract between the parties. Further, the Court concludes parol evidence will be admissible at the bench trial as proof on these points. Mr. Cary asserts that he signed the contract because the United States represented that the voucher covered his property damage claim, but the United States argues that, by accepting the $500 for the property damage claim, Mr. Cary also released the United States from any potential bodily injury claim arising out of this accident. Mr. Cary contends he decided to sign the voucher because he was told—on at least two occasions—that the voucher covered only his property damage claim and not any potential bodily or personal injury claim. The United States has not disputed those assertions nor has it provided the Court with contrary evidence or argument regarding the parties' intent when executing the voucher. The Court determines that this evidence may relate to "fraud, duress, mutual mistake, or something of the kind," which is excepted from the parol evidence rule. *Montwood Corp.*, 180 F.2d at 361.

Whether fraud, duress, or mutual mistake was involved in the procurement of the signed voucher is a threshold issue, as is whether the parties intended the voucher to be an integrated contract between them. For this reason, the Court reserves ruling on the contract-interpretation issues raised by the parties in briefing. The United States' motion for summary judgment (Dkt. No. 11) is denied.

SO ORDERED this the _17_ day of September, 2012.


_Kristine M. Baker_
Kristine G. Baker
United States District Judge