**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS**

J.C. CARY                                                                    PLAINTIFF

V.                              No. 2:11-CV-00140 KGB

UNITED STATES OF AMERICA                                       DEFENDANT

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Pursuant to Federal Rule of Civil Procedure 52(a), the Court makes the following specific

findings and conclusions:

1.      Plaintiff J.C. Cary brings this action against defendant, the United States of

America, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et. seq.,* for

damages resulting from the alleged negligence of Beverly McCabe-Sellers, an employee of the

United States Department of Agriculture.

2.      This case involves a motor-vehicle accident that occurred in Arkansas.  In actions

brought under the FTCA, courts are bound to apply the law of the state in which the acts

complained of occurred.  *See, e.g.*, *Goodman v. United States,* 2 F.3d 291, 292 (8th Cir.1993).

Here, the incident complained of occurred in Arkansas, and it is that state's law that will be

applied to Mr. Cary's claims.

3.      To establish a *prima facie* case of negligence, Mr. Cary must demonstrate that the

defendant breached a standard of care, that damages were sustained, and that the defendant's

actions were a proximate cause of those damages.  *Barriga v. Arkansas and Missouri R. Co.*, 79

Ark. App. 358, 360-61, 87 S.W.3d 808, 810 (2002).

4.      Mr. Cary, a citizen of Arkansas, was traveling north on Highway 49 in Brinkley,

Arkansas, on July 9, 2009, when an automobile owned by the United States Department of

Agriculture and driven by its employee, Ms. McCabe-Sellers, exited Interstate 40 at its intersection with Highway 49.

5.     After Ms. McCabe-Sellers exited the interstate, she turned right or south onto Highway 49.

6.     Thereafter, Ms. McCabe-Sellers came to a stop on Highway 49 and turned left into the McDonald's restaurant parking lot.

7.     Mr. Cary was traveling north bound on Highway 49 at this time.

8.     This area was under heavy construction at the time, including the use of temporary lanes.

9.     The van Ms. McCabe-Sellers was driving collided with the automobile driven by Mr. Cary.

10.     The Court determines that Ms. McCabe-Sellers was negligent in connection with the motor-vehicle accident at issue.  Section 27-51-502 of the Arkansas Code provides:

> The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard. The driver, after having so yielded and having given a signal when and as required by this chapter, may make the left turn after all other vehicles approaching the intersection which constitute an immediate hazard shall have cleared the intersection.

Arkansas Model Jury Instruction (Civil) 903 provides that a violation of this statute, although not necessarily negligence, is evidence of negligence to be considered along with all of the other facts and circumstances in the case. *See Bridgforth v. Vandiver*, 225 Ark. 702, 707, 284 S.W.2d 623, 625 (1955) (determining that violation of a traffic statute "did not constitute negligence but was only evidence of negligence to be considered by the jury").

11.     The Court credits the testimony of Officer Arnold Leon who testified that he saw no indication of any sort to suggest that Mr. Cary was driving more than 40 miles an hour, which is the posted speed limit at the intersection, and that, from the intersection where the accident occurred, an individual can see probably three and a half to four blocks down the road with unobstructed vision.

12.     For these reasons, the Court determines the collision was solely caused by the negligence of Ms. McCabe-Sellers which is imputed to defendant, United States of America.

13.     As a result of the collision, the van and Mr. Cary's vehicle collided causing property damage to Mr. Cary's automobile and injury to Mr. Cary's person.

14.     Ms. McCabe-Sellers was not injured as a result of the collision, and her passenger was not injured as a result of the collision.

15.     Mr. Cary denied medical treatment at the time of the collision.

16.     The Court determines that the collision at issue in this case was a proximate cause of at least a portion of Mr. Cary's claimed damages.  Proximate cause is a cause which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have been reached.  *Barriga*, 79 Ark. App. at 361, 87 S.W.3d at 810.  "This does not mean that the law recognizes only one proximate cause of damage.  To the contrary, if two or more causes work together to produce damage, then [the factfinder] may find that each of them was a proximate cause."  Arkansas Model Jury Instruction (Civil) 501.  Proximate cause in a negligence action is for the factfinder to decide.  *Barriga*, 79 Ark. App. at 361, 87 S.W.3d at 810.  "[P]roximate causation becomes a question of law only if reasonable minds could not differ."  *Id.*  Discussing proximate causation, the Arkansas Supreme Court has determined:

> The question of proximate cause, given negligence, is more often than not a question of fact, to be determined by viewing the attendant circumstances.  It has been said that proximate cause is a rule of physics and not a criterion of negligence.  Proximate cause may be shown by circumstantial evidence.  Such evidence is sufficient if the facts proved are of such a nature, and are so connected and related to each other, that the conclusion therefrom may be fairly inferred.  In order to pose a jury question on the causal connection between negligence and an injury, it is not necessary that the evidence exclude every other reasonable hypothesis.  It is only necessary that there be evidence that would tend to eliminate such other causes as may fairly arise from the evidence, and that the jury not be left to speculation and conjecture in deciding between two equally probable possibilities.  But it is not necessary, in order to have sufficient evidence to support a finding of proximate cause, that circumstantial evidence exclude a concurring efficient proximate cause, as distinguished from a totally independent and unrelated cause.

*St. Louis Sw. Ry. Co. v. Pennington*, 261 Ark. 650, 662-63, 553 S.W.2d 436, 441-42 (1977) (internal citations omitted).

17.     Since the collision, Mr. Cary has suffered neck pain that has caused him to undergo medical treatment, miss work, and experience pain and suffering.  He testified he was stiff and sore after the accident but believed his symptoms would clear up.  They did not clear up.  He testified that, instead, his symptoms became worse in a matter of days after the accident when his neck froze up while he was taking his mother to a doctor's appointment in Memphis, Tennessee.

18.     Mr. Cary has a medical history of cervical disc degeneration, which is known to cause chronic arthritic neck pain.

19.     Mr. Cary had an asymptomatic degenerative neck condition that subjected him to greater injury than a person without that condition or, in the alternative, his condition became symptomatic as a proximate result of this collision.  *See, e.g.*, *Kudabeck v. The Kroger Co.*, 338 F.3d 856 (8th Cir. 2003) (examining causation evidence when customer who slipped and fell in

grocery store brought negligence suit against store, alleging that as a result of the accident she suffered from advanced degenerative disc disease and osteoarthritis in her back).

20.     Based on all of the testimony and evidence presented, the Court determines Mr. Cary's injury is permanent.

21.     Since the motor vehicle accident, Mr. Cary has received medical treatment, including treatment from chiropractors, from doctors with the University of Arkansas for Medical Sciences ("UAMS"), and Dr. William Ackerman, a pain-management physician in Little Rock, Arkansas.

22.     Dr. William Ackerman saw Mr. Cary for the first time on March 24, 2011.  His last visit was May 2012.  At that time, Dr. Ackerman prescribed Mr. Cary lidocaine ointment for several months and understood Mr. Cary was going to UAMS for other treatment.   Dr. Ackerman did request that Mr. Cary return eight weeks from his May 2012 visit, and Mr. Cary did not return.

23.     Dr. Ackerman testified by deposition that, in his medical opinion, Mr. Cary's complaints were related to his motor vehicle accident.  He assessed that Mr. Cary's complaints included those regarding his cervical spine and lumbar spine, but that his complaints regarding his lumbar spine result from a chronic degenerative problem, not attributable to the accident.  He further testified that he believes it would be impossible to determine with any degree of certainty what pain is attributable to Mr. Cary's pre-existing medical condition and what pain is attributable to the motor vehicle accident.

24.     Medical records and several witnesses, including but not limited to Tim Heavner, Tanya Sandage, and Elva Waldrob, who have known or worked with Mr. Cary both before and

after this accident, provided evidence that his injuries are significant, are ongoing, and more likely than not resulted in part from this collision

26.     Mr. Cary himself attributes his injuries to this accident.  He testified in part that he was able to do his job without pain in his head or neck before this accident.

26.     The Court credits only for purposes of demonstrating his efforts to mitigate his damages Mr. Cary's testimony that he paid out-of-pocket for much of the treatment he sought after the accident in an effort to reduce the effects of his injuries and provide pain relief.

27.     Mr. Cary has a remote history of addiction issues.  He also has a commercial driver's license, which is required for his job.  For these reasons, he has been reluctant to rely upon narcotic pain medications during the day.

28.     Mr. Cary smoked before the collision and continued to smoke during his recovery from the accident.  He stopped smoking only after his heart attack.  Dr. Ackerman reported that, based on research he conducted and intends to or has by now published, those prescribed hydrocodone who smoke generally do not receive the same pain relief as a nonsmoker due to a decrease in the conversion of hydrocodone to hydromorphone.  Because Mr. Cary was reluctant to rely upon narcotic pain medications during the day, the Court gives this evidence of Mr. Cary's smoking and its impact on pain relief limited weight based on the facts and circumstances of Mr. Cary's case.

29.     Mr. Cary has attempted alternate therapies such as, among others, chiropractic treatments, physical therapies, and traction with a tens unit.  He reports that these types of therapies, while offering some relief, have not provided the long term pain relief he seeks.

30.     Mr. Cary began to see Dr. Amir Qureshi at UAMS after his prior treating doctor, Dr. Doss, left UAMS.  Dr. Qureshi performed on Mr. Cary a nerve block test.  Mr. Cary reported

that the nerve block test was successful for treating some of his pain.  However, Mr. Cary suffered a heart attack in close proximity to receiving the initial nerve block test; he had five artery bypasses.  At the time of trial, Mr. Cary had not undergone any further treatments from Dr. Qureshi, as he was still recovering from his heart attack.

31.    The Court has considered the full extent of the injury sustained, even though the degree of injury is found by the Court to have proximately resulted from the aggravation of a condition that, at least in part, already existed and that predisposed Mr. Cary to injury to a greater extent than another person.  The Court does not award Mr. Cary damages for any pain, suffering, or mental anguish which he would have suffered even though the accident had not occurred.  *See* Arkansas Model Jury Instruction (Civil) 2203.

32.    The Court will award Mr. Cary damages for past medical treatment received in connection with this accident.   "The reasonableness and necessity of medical expenses are questions of fact . . . ."  *Kempner v. Schulte*, 318 Ark. 433, 437, 885 S.W.2d 892, 894 (1994). Further, "the testimony of the injured party alone, in some cases, can provide a sufficient foundation for the introduction of medical expenses incurred."  *Shelter Mut. Ins. Co. v. Tucker*, 295 Ark. 260, 264, 748 S.W.2d 136, 138 (1988).

33.    Mr. Cary will continue to need some medical treatment in the future for the injuries sustained in connection with this accident.   The Court will award Mr. Cary some damages for future medical treatment.  "It is not speculation or conjecture to calculate future medical expenses based upon the history of medical expenses that have accrued as of the trial date, particularly when there is also a degree of medical certainty that future medical expenses will be necessary.  Future medical expenses do not require the same degree of certainty as past medical expenses."  *Willson Safety Prods. v. Eschenbrenner*, 302 Ark. 228, 233, 788 S.W.2d

729, 733 (1990) (internal citations omitted).  This Court acknowledges that there is some dispute under Arkansas law as to what degree of medical certainty is necessary to demonstrate the need for future medical expenses.  *See E-Ton Dynamics Indus. Corp. v. Hall*, 83 Ark. App. 35, 39-40, 115 S.W.3d 816, 819 (2003).  Here, the Court determines the threshold has been met to award such damages based on Mr. Cary's own testimony and his medical records in evidence.

34.     Although the threshold has been met, there was conflicting evidence presented about Mr. Cary's future medical treatment needs and expenses attributable to his injury resulting from the accident.  Dr. Tanya Rutherford Owen testified primarily to these issues.  Although the Court credits her testimony, the Court reduces the amount of future medical treatment costs awarded to Mr. Cary from that calculated by Dr. Owen based on Mr. Cary's own testimony, his medical records, and other evidence presented.  Some of the evidence the Court has considered in this regard is that Mr. Cary did not have and had no experience with hydrotherapy.  All of the physical therapy prescribed for Mr. Cary he completed, and those costs were submitted with past medical expenses incurred.  Mr. Cary on his own opted not to take prescribed sleeping medication, and he also declined psychiatric treatment after the accident.

35.     Since the motor vehicle accident on July 9, 2009, Mr. Cary has continued his employment as a driver with Cary Trucking Company.  He is self-employed and operates as an independent contractor, hauling loads for various customers.  His business, and the profit he derives from his business, depends on many variables.

36.     Mr. Cary acknowledges that his income has not particularly diminished in the sense that what he shows as net income or profits has not gone down.  In fact, evidence was presented that Mr. Cary lost no wages as a result of the accident and that his gross income actually increased since 2009.  However, Mr. Cary and other witnesses, including Mr. Heavener,

testified that Mr. Cary was not working at the level or capacity after the accident as he had been working before.

37.     Mr. Cary continues to work but with pain that is likely to limit his work activities in the future.  Therefore, Mr. Cary claims he has suffered a loss of ability to earn in the future. Mr. Cary can recover lost earning capacity provided his injury is permanent, which this Court has concluded it is.  *See Graftenreed v. Seabaugh*, 100 Ark. App. 364, 369, 268 S.W.3d 905, 912 (2007) ("It is well recognized that impairment of earning capacity is recoverable only upon proof that an injury is permanent.").  Further, "[p]roof of a specific pecuniary loss is not indispensable to recovery for this element." *Id*. at 369-70, 268 S.W.3d at 912.  "Loss of past and future income may occur without loss of future earning capacity.  Conversely, even if past or present income has not been lost, earning capacity in the future may be impaired."  Howard W. Brill, *Arkansas Law Of Damages*, § 29:4 (5th ed. 2004).  In determining the plaintiff's future earning capacity that purportedly has been lost, the fact-finder may consider not only past earnings, but also the plaintiff's education and training, his innate qualities and ambition, the loss of a career, the likelihood of promotion or a substantial change in future income, and preparation for another occupation or profession. *Id*. (citing Henry Woods, *Earnings and Earning Capacity as Elements of Damages in Personal Injury Litigation*, 18 Ark. L. Rev. 304, 309-10 (1965)).

38.     Mr. Cary estimates that he has lost $300 to $400 per week on loads since the collision.  There were approximately 200 weeks from the collision to the date of trial.  Aside from Mr. Cary's own estimate, no other evidence was presented to support this claimed amount. The Court will award some amount for loss of ability to earn in the future, taking into account all evidence presented in this regard.

39.     The Court will award Mr. Cary damages for pain and suffering attributable to his injuries from the accident, which includes damages for pain and suffering already experienced and that which he is reasonably certain to experience in the future.  Mr. Cary, as well as other witnesses such as Ms. Sandage and Ms. Waldrob, testified to this.  "There is no definite and satisfactory rule to measure compensation for pain and suffering and the amount of damages must depend on the circumstances of each particular case."  *Hamby v. Haskins*, 275 Ark. 385, 390, 630 S.W.2d 37, 40 (1982).  "Compensation for pain and suffering must be left largely to the sound discretion of a trial jury and the conclusion reached by it should not be disturbed unless the award is clearly excessive."  *Id.* (concluding that the award of damages was not "so shocking that we will order a remittitur").  As to future pain and suffering, "[e]vidence of future pain and suffering and permanent disability must be established with reasonable certainty[,] and it must not be left up to speculation or conjecture on the part of the jury."  *Handy Dan Home Imp. Ctr., Inc.-Arkansas v. Peters*, 286 Ark. 102, 104, 689 S.W.2d 551, 552 (1985).  Reasonable certainty is more than a "good possibility."  *Bailey v. Bradford*, 244 Ark. 8, 9, 423 S.W.2d 565, 567 (1968).  Expert testimony is not necessarily required to establish future pain and suffering; lay testimony can suffice.  *Id.* at 9-10, 423 S.W.2d at 566-67.

40.     Following the bench trial, and having considered the entire record and the findings of fact and conclusions of law set out above, the Court finds that Mr. Cary is entitled to damages for the following elements of damage:

| | |
|---|---|
| Medical expenses incurred to date: | $ 14,359.40 |
| Future medical expenses: | $ 20,000.00 |
| Pain, suffering and mental anguish: | $ 15,000.00 |
| Loss of ability to earn in the future: | $ 15,000.00 |

* * *

The Court determines that Mr. Cary is entitled to judgment against the United States of America in the amount of $64,359.40.

SO ORDERED this the 20th day of August, 2013.

_____
Kristine G. Baker
United States District Judge